**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| OURARING, INC., Plaintiff | § | |
| v. | § | NO. 2:25-CV-928 |
| ULTRAHUMAN HEALTHCARE LLC and SVTRONICS, INC., Defendant. | § | Date: November 10, 2025 |

**DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT AND DEFENDANTS' COUNTERCLAIMS**

Defendants Ultrahuman Healthcare LLC ("Ultrahuman") and SVTronics, Inc. ("SVTronics") (collectively "Defendants"), answer the Complaint for Patent Infringement ("Complaint") filed by Plaintiff Ouraring, Inc. ("Oura" or "Plaintiff"), and assert the Counterclaims set forth below. Defendants deny the allegations or characterizations in Oura's Complaint unless expressly admitted below:

**OVERVIEW**

1. Defendants admit that the Complaint purports to be an action for patent infringement. Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations set forth in Paragraph 1 of the Complaint, and therefore deny them.

2. Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations set forth in Paragraph 2 of the Complaint, and therefore deny them.

3. Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations set forth in Paragraph 3 of the Complaint, and therefore deny them.

4. Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations set forth in Paragraph 4 of the Complaint, and therefore deny them.

5. Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations set forth in Paragraph 5 of the Complaint, and therefore deny them.

6. Defendants deny the allegations set forth in Paragraph 6 of the Complaint.

7. Defendants admit that Ultrahuman launched its Ultrahuman Ring product on or about July 2022. Defendants deny the remaining allegations set forth in Paragraph 7 of the Complaint.

8. Defendants admit that Oura filed a case styled Ōura Health Oy et al. v. Ultrahuman Healthcare Pvt. Ltd. et al., Case No. 2:23-cv-00396-JRG-RSP, in the Eastern District of Texas on September 1, 2023, and deny all allegations of infringement asserted therein. Defendants deny the remaining allegations set forth in Paragraph 8 of the Complaint.

9. Defendants deny the allegations set forth in Paragraph 9 of the Complaint.

10. Defendants admit that Oura filed a Section 337 Complaint styled Certain Smart Wearable Devices, Systems, and Components Thereof, Inv. No. 337-TA-1398 in the United States International Trade Commission. Defendants deny the remaining allegations set forth in Paragraph 10 of the Complaint.

11. Defendants admit that the text set forth in subparagraphs (a) through (d) of Paragraph 11 purports to be quotes from the cited document. Defendants deny the remaining allegations set forth in Paragraph 11 of the Complaint.

12. Defendants admit that the text set forth in subparagraphs (a) through (c) of Paragraph 12 purports to be quotes from the cited document. Defendants deny the remaining allegations set forth in Paragraph 12 of the Complaint.

13. Defendants admit that Exhibit 3 and Exhibit 4 purport to show what Plaintiff alleges. Defendants deny the remaining allegations set forth in Paragraph 13 of the Complaint.

14. Defendants deny the allegations set forth in Paragraph 14 of the Complaint.

## PARTIES

15. Defendants admit that Plaintiff purports to be a Delaware corporation with its principal place of business at 222 Kearny Street, San Francisco, California 94108.

16. Defendants admit that Plaintiff purports to be a wholly owned subsidiary of Oura Health Oy, a Finnish company.

17. Defendants admit that Ultrahuman is a Delaware limited liability company and may be served through its registered agent Harvard Business Services, Inc., 16192 Coastal Hwy, Lewes, Delaware 19958.

18. Defendants admit that SVTronics is a Texas corporation and may be served through its registered agent Jasmat Sutaria, 3465 Technology Drive, Plano, Texas 75074.

19. Defendants admit that the website link cited in Paragraph 19 exists. Defendants deny the remaining allegations set forth in Paragraph 19 of the Complaint.

20. Defendants admit that they employ full-term personnel in the Eastern District of Texas.

21. Defendants admit that Ultrahuman offers products and services to customers and potential customers through online channels accessible in the Eastern District of Texas. Defendants deny the remaining allegations set forth in Paragraph 21 of the Complaint.

## NATURE OF THE ACTION, JURISDICTION, AND VENUE

22. Defendants admit that the Complaint purports to bring an action for patent infringement under the patent laws of the United States, 35 U.S.C. § 271 et seq. Defendants deny

that they have infringed any valid patent and deny the remaining allegations set forth in Paragraph 22 of the Complaint.

23. Defendants admit that this Court has subject matter jurisdiction over patent infringement actions pursuant to 28 U.S.C. §§ 1331 and 1338(a).

24. Defendants do not contest personal jurisdiction for purposes of this litigation. Defendants admit that they offer products for sale through online channels accessible in the Eastern District of Texas. Defendants deny the remaining allegations set forth in Paragraph 24 of the Complaint.

25. Defendants admit that SVTronics maintains a regular and established manufacturing facility at 3465 Technology Dr., Plano, TX 75074. Defendants deny the remaining allegations set forth in Paragraph 25 of the Complaint.

26. Defendants deny the allegations set forth in Paragraph 26 of the Complaint.

27. Defendants deny the allegations set forth in Paragraph 27 of the Complaint.

28. Defendants deny the allegations set forth in Paragraph 28 of the Complaint.

29. Defendants do not contest venue for purposes of this litigation.

30. Ultrahuman does not contest venue for purposes of this litigation. Defendants deny the remaining allegations set forth in Paragraph 30 of the Complaint.

31. SVTronics does not contest venue for purposes of this litigation. Defendants admit that SVTronics maintains a regular and established manufacturing facility at 3465 Technology Dr., Plano, TX 75074. Defendants deny the remaining allegations set forth in Paragraph 31 of the Complaint.

32. Defendants deny the allegations set forth in Paragraph 32 of the Complaint.

33. Defendants deny the allegations set forth in Paragraph 33 of the Complaint.

34. Defendants deny the allegations set forth in Paragraph 34 of the Complaint.

**COUNT 1 – INFRINGEMENT OF U.S. PATENT NO. 12,393,228**

35. Defendants incorporate their responses to Paragraphs 1-34 above by reference.

36. Defendants admit that Exhibit 5 purports to be U.S. Patent No. 12,393,228.

37. Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations set forth in Paragraph 37 of the Complaint, and therefore deny them.

38. Defendants admit that the '228 Patent appears to contain the quoted language. Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations set forth in Paragraph 38 of the Complaint, and therefore deny them.

39. Defendants admit that the '228 Patent appears to contain the quoted language and figures shown. Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations set forth in Paragraph 39 of the Complaint, and therefore deny them.

40. Defendants deny the allegations set forth in Paragraph 40 of the Complaint.

41. Defendants deny the allegations set forth in Paragraph 41 of the Complaint.

42. Defendants admit that the website links cited exist and that certain language purports to be quoted therefrom. Defendants deny any mischaracterization of such sources. Defendants lack sufficient knowledge or information to form a belief as to the truth of certain technical allegations, and therefore deny them. Defendants deny the remaining allegations set forth in Paragraph 42 of the Complaint.

43. Defendants admit that the images shown purport to be images of Ultrahuman products. Defendants deny the remaining allegations set forth in Paragraph 43 of the Complaint.

44. Defendants admit that the excerpts shown purport to be from the cited websites. Defendants deny the remaining allegations set forth in Paragraph 44 of the Complaint.

45. Defendants deny the allegations set forth in Paragraph 45 of the Complaint.

46. Defendants deny the allegations set forth in Paragraph 46 of the Complaint.

47. Defendants admit that the quoted language appears on the cited website. Defendants deny that such statements constitute instructions to infringe any valid patent claim. Defendants deny the remaining allegations and legal conclusions set forth in Paragraph 47 of the Complaint.

48. Defendants deny the allegations set forth in Paragraph 48 of the Complaint.

49. Defendants deny the allegations set forth in Paragraph 49 of the Complaint.

50. Defendants deny the allegations set forth in Paragraph 50 of the Complaint.

51. Defendants deny the allegations set forth in Paragraph 51 of the Complaint.

52. Defendants deny the allegations set forth in Paragraph 52 of the Complaint.

53. Defendants deny the allegations set forth in Paragraph 53 of the Complaint.

## COUNT 2 - INFRINGEMENT OF U.S. PATENT NO. 12,393,229

54. Defendants incorporate their responses to Paragraphs 1-53 above by reference.

55. Defendants admit that Exhibit 6 purports to be U.S. Patent No. 12,393,229.

56. Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations set forth in Paragraph 56 of the Complaint, and therefore deny them.

57. Defendants admit that the ‘229 Patent appears to contain the quoted language. Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations set forth in Paragraph 57 of the Complaint, and therefore deny them.

58. Defendants admit that the ‘229 Patent appears to contain the quoted language and figures shown. Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations set forth in Paragraph 58 of the Complaint, and therefore deny them.

59. Defendants deny the allegations set forth in Paragraph 59 of the Complaint.

60. Defendants deny the allegations set forth in Paragraph 60 of the Complaint.

61. Defendants admit that the website links cited exist and that certain language purports to be quoted therefrom. Defendants deny any mischaracterization of such sources. Defendants lack sufficient knowledge or information to form a belief as to the truth of certain technical allegations, and therefore deny them. Defendants deny the remaining allegations set forth in Paragraph 61 of the Complaint.

62. Defendants admit that the images shown purport to be images of Ultrahuman products. Defendants deny the remaining allegations set forth in Paragraph 62 of the Complaint.

63. Defendants admit that the excerpts shown purport to be from the cited websites. Defendants deny the remaining allegations set forth in Paragraph 63 of the Complaint.

64. Defendants deny the allegations set forth in Paragraph 64 of the Complaint.

65. Defendants deny the allegations set forth in Paragraph 65 of the Complaint.

66. Defendants admit that the quoted language appears on the cited website. Defendants deny that such statements constitute instructions to infringe any valid patent claim. Defendants deny the remaining allegations and legal conclusions set forth in Paragraph 66 of the Complaint.

67. Defendants deny the allegations set forth in Paragraph 67 of the Complaint.

68. Defendants deny the allegations set forth in Paragraph 68 of the Complaint.

69. Defendants deny the allegations set forth in Paragraph 69 of the Complaint.

70. Defendants deny the allegations set forth in Paragraph 70 of the Complaint.

71. Defendants deny the allegations set forth in Paragraph 71 of the Complaint.

72. Defendants deny the allegations set forth in Paragraph 72 of the Complaint.

**COUNT 3 - INFRINGEMENT OF U.S. PATENT NO. 12,399,530**

73. Defendants incorporate their responses to Paragraphs 1-72 above by reference.

74. Defendants admit that Exhibit 7 purports to be U.S. Patent No. 12,399,530.

75. Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations set forth in Paragraph 75 of the Complaint, and therefore deny them.

76. Defendants admit that the '530 Patent appears to contain the quoted language. Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations set forth in Paragraph 76 of the Complaint, and therefore deny them.

77. Defendants admit that the '530 Patent appears to contain the quoted language and figures shown. Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations set forth in Paragraph 77 of the Complaint, and therefore deny them.

78. Defendants deny the allegations set forth in Paragraph 78 of the Complaint.

79. Defendants deny the allegations set forth in Paragraph 79 of the Complaint.

80. Defendants admit that the website links cited exist and that certain language purports to be quoted therefrom. Defendants deny any mischaracterization of such sources. Defendants lack sufficient knowledge or information to form a belief as to the truth of certain technical allegations, and therefore deny them. Defendants deny the remaining allegations set forth in Paragraph 80 of the Complaint.

81. Defendants admit that the images shown purport to be images of Ultrahuman products. Defendants deny the remaining allegations set forth in Paragraph 81 of the Complaint.

82. Defendants admit that the excerpts shown purport to be from the cited websites. Defendants deny the remaining allegations set forth in Paragraph 82 of the Complaint.

83. Defendants deny the allegations set forth in Paragraph 83 of the Complaint.

84. Defendants deny the allegations set forth in Paragraph 84 of the Complaint.

85. Defendants admit that the quoted language appears on the cited website. Defendants deny that such statements constitute instructions to infringe any valid patent claim. Defendants deny the remaining allegations and legal conclusions set forth in Paragraph 85 of the Complaint.

86. Defendants deny the allegations set forth in Paragraph 86 of the Complaint.

87. Defendants deny the allegations set forth in Paragraph 87 of the Complaint.

88. Defendants deny the allegations set forth in Paragraph 88 of the Complaint.

89. Defendants deny the allegations set forth in Paragraph 89 of the Complaint.

90. Defendants deny the allegations set forth in Paragraph 90 of the Complaint.

91. Defendants deny the allegations set forth in Paragraph 91 of the Complaint.

## COUNT 4 - INFRINGEMENT OF U.S. PATENT NO. 12,399,531

92. Defendants incorporate their responses to Paragraphs 1-91 above by reference.

93. Defendants admit that Exhibit 8 purports to be U.S. Patent No. 12,399,531.

94. Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations set forth in Paragraph 94 of the Complaint, and therefore deny them.

95. Defendants admit that the ‘531 Patent appears to contain the quoted language. Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations set forth in Paragraph 95 of the Complaint, and therefore deny them.

96. Defendants admit that the ‘531 Patent appears to contain the quoted language and figures shown. Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations set forth in Paragraph 96 of the Complaint, and therefore deny them.

97. Defendants deny the allegations set forth in Paragraph 97 of the Complaint.

98. Defendants deny the allegations set forth in Paragraph 98 of the Complaint.

99. Defendants admit that the website links cited exist and that certain language purports to be quoted therefrom. Defendants deny any mischaracterization of such sources. Defendants lack sufficient knowledge or information to form a belief as to the truth of certain technical allegations, and therefore deny them. Defendants deny the remaining allegations set forth in Paragraph 99 of the Complaint.

100. Defendants admit that the images shown purport to be images of Ultrahuman products. Defendants deny the remaining allegations set forth in Paragraph 100 of the Complaint.

101. Defendants admit that the excerpts shown purport to be from the cited websites. Defendants deny the remaining allegations set forth in Paragraph 101 of the Complaint.

102. Defendants deny the allegations set forth in Paragraph 102 of the Complaint.

103. Defendants deny the allegations set forth in Paragraph 103 of the Complaint.

104. Defendants admit that the quoted language appears on the cited website. Defendants deny that such statements constitute instructions to infringe any valid patent claim. Defendants deny the remaining allegations and legal conclusions set forth in Paragraph 104 of the Complaint.

105. Defendants deny the allegations set forth in Paragraph 105 of the Complaint.

106. Defendants deny the allegations set forth in Paragraph 106 of the Complaint.

107. Defendants deny the allegations set forth in Paragraph 107 of the Complaint.

108. Defendants deny the allegations set forth in Paragraph 108 of the Complaint.

109. Defendants deny the allegations set forth in Paragraph 109 of the Complaint.

110. Defendants deny the allegations set forth in Paragraph 110 of the Complaint.

**COUNT 5 - INFRINGEMENT OF U.S. PATENT NO. 12,222,759**

111. Defendants incorporate their responses to Paragraphs 1-110 above by reference.

112. Defendants admit that Exhibit 9 purports to be U.S. Patent No. 12,222,759.

113. Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations set forth in Paragraph 113 of the Complaint, and therefore deny them.

114. Defendants admit that the ‘759 Patent appears to contain the quoted language. Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations set forth in Paragraph 114 of the Complaint, and therefore deny them.

115. Defendants admit that the ‘759 Patent appears to contain the quoted language and figures shown. Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations set forth in Paragraph 115 of the Complaint, and therefore deny them.

116. Defendants deny the allegations set forth in Paragraph 116 of the Complaint.

117. Defendants deny the allegations set forth in Paragraph 117 of the Complaint.

118. Defendants admit that the website links cited exist and that certain language purports to be quoted therefrom. Defendants deny any mischaracterization of such sources. Defendants lack sufficient knowledge or information to form a belief as to the truth of certain technical allegations, and therefore deny them. Defendants deny the remaining allegations set forth in Paragraph 118 of the Complaint.

119. Defendants admit that the images shown purport to be images of Ultrahuman products. Defendants deny the remaining allegations set forth in Paragraph 119 of the Complaint.

120. Defendants admit that the excerpts shown purport to be from the cited websites. Defendants deny the remaining allegations set forth in Paragraph 120 of the Complaint.

121. Defendants deny the allegations set forth in Paragraph 121 of the Complaint.

122. Defendants deny the allegations set forth in Paragraph 122 of the Complaint.

123. Defendants admit that the quoted language appears on the cited website. Defendants deny that such statements constitute instructions to infringe any valid patent claim. Defendants deny the remaining allegations and legal conclusions set forth in Paragraph 123 of the Complaint.

124. Defendants deny the allegations set forth in Paragraph 124 of the Complaint.

125. Defendants deny the allegations set forth in Paragraph 125 of the Complaint.

126. Defendants deny the allegations set forth in Paragraph 126 of the Complaint.

127. Defendants deny the allegations set forth in Paragraph 127 of the Complaint.

128. Defendants deny the allegations set forth in Paragraph 128 of the Complaint.

129. Defendants deny the allegations set forth in Paragraph 129 of the Complaint.

130. Defendants deny that Plaintiff is entitled to any of the relief sought in paragraphs A through I of Plaintiff's Prayer for Relief.

131. Defendants demand a trial by jury on all issues so triable.

## AFFIRMATIVE DEFENSES

Without assuming any burden that they would not otherwise have, and without waiving any argument that Plaintiff has failed to meet any burden that is properly Plaintiff's, Defendants assert the following defenses and affirmative defenses to Plaintiff's Complaint. Defendants reserve the right to amend this Answer to add, modify, or remove defenses and affirmative defenses as discovery proceeds.

## FIRST AFFIRMATIVE DEFENSE (NON-INFRINGEMENT)

132. Defendants incorporate by reference their responses to Paragraphs 1 through 131 above.

133. The asserted claims of the ‘228, ‘229, ‘530, ‘531, and ‘759 Patents are not infringed and have not been infringed by Defendants, either directly, contributorily, by inducement, literally, or under the doctrine of equivalents.

**SECOND AFFIRMATIVE DEFENSE (INVALIDITY)**

134. Defendants incorporate by reference their responses to Paragraphs 1 through 133 above.

135. The asserted claims of the ‘228, ‘229, ‘530, ‘531, and ‘759 Patents are invalid for failure to comply with one or more of the conditions for patentability set forth in Title 35 of the United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, and/or 112.

**THIRD AFFIRMATIVE DEFENSE (FAILURE TO STATE A CLAIM)**

136. Defendants incorporate by reference their responses to Paragraphs 1 through 135 above.

137. Plaintiff’s Complaint fails to state a claim upon which relief can be granted.

**FOURTH AFFIRMATIVE DEFENSE (LICENSE AND/OR EXHAUSTION)**

138. Defendants incorporate by reference their responses to Paragraphs 1 through 137 above.

139. Upon information and belief, Plaintiff’s claims are barred, in whole or in part, by the doctrine of license, express or implied, and/or exhaustion.

**FIFTH AFFIRMATIVE DEFENSE (EQUITABLE DEFENSES)**

140. Defendants incorporate by reference their responses to Paragraphs 1 through 139 above.

141. Plaintiff’s claims are barred, in whole or in part, by the equitable doctrines of laches, estoppel, acquiescence, and/or unclean hands.

**SIXTH AFFIRMATIVE DEFENSE (LIMITATION ON DAMAGES)**

142. Defendants incorporate by reference their responses to Paragraphs 1 through 141 above.

143. Plaintiff's claims for damages, if any, are limited by 35 U.S.C. §§ 286, 287, and/or 288.

**SEVENTH AFFIRMATIVE DEFENSE (NO WILLFUL INFRINGEMENT)**

144. Defendants incorporate by reference their responses to Paragraphs 1 through 143 above.

145. Defendants have not willfully infringed any valid and enforceable claim of the asserted patents, and Plaintiff is not entitled to enhanced damages or attorneys' fees.

**EIGHTH AFFIRMATIVE DEFENSE (NO IRREPARABLE HARM)**

146. Defendants incorporate by reference their responses to Paragraphs 1 through 145 above.

147. Plaintiff will suffer no irreparable harm as a result of any alleged infringement by Defendants, has an adequate remedy at law for any alleged injury, and is not entitled to injunctive relief.

**NINTH AFFIRMATIVE DEFENSE (PROSECUTION HISTORY ESTOPPEL)**

148. Defendants incorporate by reference their responses to Paragraphs 1 through 147 above.

149. Plaintiff's infringement claims are barred, in whole or in part, by the doctrine of prosecution history estoppel.

**TENTH AFFIRMATIVE DEFENSE (GOOD FAITH AND JUSTIFICATION)**

150. Defendants incorporate by reference their responses to Paragraphs 1 through 149 above.

151. All actions taken by Defendants have been in good faith, with justification, and in the exercise of their rights.

152. Defendants reserve the right to assert additional defenses and affirmative defenses as they become known through discovery or otherwise.

**COUNTERCLAIMS**

Defendant Ultrahuman Healthcare LLC ("Counterclaim-Plaintiff" or "Ultrahuman"), for its Counterclaims for patent infringement against Plaintiff Ouraring, Inc. ("Counterclaim-Defendant"), alleges as follows, and Defendants Ultrahuman and SVTronics, Inc. (collectively "Counterclaim-Plaintiffs"), for their Counterclaims for declaratory judgment against Counterclaim-Defendant, allege as follows:

**PARTIES**

1. Counterclaim-Plaintiff Ultrahuman Healthcare LLC is a limited liability company organized and existing under the laws of the State of Delaware, with a principal place of business at 8 The Green, 7640 Dover, Delaware 19901.

2. Counterclaim-Plaintiff SVTronics, Inc. is a corporation organized and existing under the laws of the State of Texas, with a principal place of business at 3465 Technology Drive, Plano, Texas 75074.

3. Upon information and belief, Counterclaim-Defendant Ouraring, Inc. is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 222 Kearny Street, San Francisco, California 94108.

4. Upon information and belief, Counterclaim-Defendant Ouraring, Inc. is a wholly owned subsidiary of Oura Health Oy, a Finnish company organized and existing under the laws of Finland.

5. Counterclaim-Defendant is involved in the design, manufacture, use, import, offering for sale and/or sales of certain smart ring devices and associated software and/or cloud services, including the Accused Instrumentalities, defined below. On information and belief, Counterclaim-Defendant is also involved in the design, manufacture, use, import, offering for sale and/or sales of products and/or services provided by Counterclaim-Defendant's subsidiaries and affiliates.

6. On information and belief, Counterclaim-Defendant has used, sold, or offered to sell products and services, including the Accused Instrumentalities, in this judicial district.

## NATURE OF THE ACTION

7. Counterclaim-Plaintiffs reallege and incorporate by reference the allegations set forth in Paragraphs 1 through 6 above.

8. This is an action for patent infringement under the patent laws of the United States, Title 35 of the United States Code. Counterclaim-Plaintiff Ultrahuman asserts patent infringement counterclaims against Counterclaim-Defendant.

9. This is an action declaratory relief arising under the patent laws of the United States and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. Counterclaim-Plaintiffs Ultrahuman and SVTronics assert counterclaims for declaratory judgment.

**Declaratory Judgment**

10. Counterclaim-Defendant has filed a Complaint in this action alleging that Counterclaim-Plaintiff Ultrahuman Healthcare LLC infringes U.S. Patent Nos. 12,393,228, 12,393,229, 12,399,530, 12,399,531, and 12,222,759 (collectively, the "Patents-in-Suit").

11. Counterclaim-Defendant has alleged that Counterclaim-Plaintiffs' products, including but not limited to the Ultrahuman Ring AIR, infringe one or more claims of the Patents-in-Suit.

12. An actual, substantial, and justiciable controversy exists between the parties concerning whether Counterclaim-Plaintiffs' products infringe any valid and enforceable claim of the Patents-in-Suit and whether the Patents-in-Suit are valid and enforceable.

**Patent Infringement**

13. On information and belief, Counterclaim-Defendant designs, manufactures, imports, sells, offers for sale, and provisions the Accused Instrumentalities, as defined below.

14. The Accused Instrumentalities infringe U.S. Patent Nos. 8,496,597, 9,155,522, and 9,155,523 (the "Asserted Patents").

## JURISDICTION AND VENUE

15. Counterclaim-Plaintiffs reallege and incorporate by reference the allegations set forth in Paragraphs 1 through 14 above.

16. This Court has subject matter jurisdiction over these Counterclaims under 28 U.S.C. §§ 1331 and 1338(a) because these Counterclaims arise under the patent laws of the United States and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

17. This Court has personal jurisdiction over Counterclaim-Defendant by virtue of its having voluntarily submitted to the jurisdiction of this Court by filing its Complaint in this District and by its systematic and continuous contacts with this District.

18. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and 1400(b) because Counterclaim-Defendant has submitted itself to the jurisdiction of this Court by filing its Complaint in this District.

## FACTUAL BACKGROUND

19. Counterclaim-Plaintiff Ultrahuman realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 18 above. Ultrahuman asserts as follows:

20. Ultrahuman is a leading innovator in health optimization. Since its founding in 2019, Ultrahuman has pursued the twin goals of resolving the problem of fragmented health data and addressing worldwide health and welfare concerns. To further this mission, Ultrahuman has developed and launched a suite of products—including glucose monitors, rings, and home health monitors. Ultrahuman's first product, released in July 2021, is its M1 system that integrates with a continuous glucose monitor, providing real-time feedback via a mobile application on glucose levels and metabolic data measured with a glucose monitor. Ultrahuman has continued to improve this product since its release, and it remains highly successful to this day.

21. Ultrahuman's next product was its Ultrahuman Ring (R1) product, a smart, wearable ring designed to help its users track and use measured biomarkers. Ultrahuman launched its second generation ring, the Ring AIR, in June 2023, which measures—directly or indirectly—sleep, heart rate variability, movement, stress, temperature, and other crucial biomarkers. It has the ability to work in conjunction with Ultrahuman's M1 device to provide tailored insights into a person's unique metabolic need.

22. Ultrahuman applied its expertise in tracking biomarkers and understanding individuals' health based on biomarkers to women's health, developing novel devices and methods that use biomarkers for fertility tracking. Using cutting-edge biomarker technology, Ultrahuman

Ring products allow users to track their ovulation window seamlessly with the Ultrahuman Ring product line and their companion app. Ultrahuman invested in and developed advanced algorithms incorporating biomarkers like skin temperature to provide users with a data-driven approach to understanding their fertility cycles. To advance its innovations in the fertility tracking space, Ultrahuman invested in valuable intellectual property, including the Ultrahuman Patents, identified below.

**The Ultrahuman Patents**

23. U.S. Patent Nos. 8,496,597, 9,155,522, and 9,155,523 (collectively, the "Ultrahuman Patents") are assigned to viO HealthTech Limited and are exclusively licensed to Ultrahuman Healthcare LLC through an assignment of an exclusive license from Ultrahuman Healthcare Private Limited to Ultrahuman Healthcare LLC.

24. U.S. Patent No. 8,496,597, titled "Method of Detecting and Predicting Ovulation and the Period of Fertility" (the "'597 Patent"), was duly and legally issued on July 30, 2013. A true and correct copy of the '597 Patent is attached hereto as Exhibit A. The claims of the '597 Patent are valid and enforceable.

25. Counterclaim-Plaintiff Ultrahuman has the right to assert the '597 Patent based on an exclusive license from viO HealthTech Limited.

26. U.S. Patent No. 9,155,522, titled "Method of Detecting and Predicting Ovulation and the Period of Fertility" (the "'522 Patent"), was duly and legally issued on October 13, 2015. A true and correct copy of the '522 Patent is attached hereto as Exhibit B. The claims of the '522 Patent are valid and enforceable.

27. Counterclaim-Plaintiff Ultrahuman has the right to assert the '522 Patent based on an exclusive license from viO HealthTech Limited.

28. U.S. Patent No. 9,155,523, titled "Method of Detecting and Predicting Ovulation and the Period of Fertility" (the "'522 Patent"), was duly and legally issued on October 13, 2015. A true and correct copy of the '523 Patent is attached hereto as Exhibit C. The claims of the '522 Patent are valid and enforceable.

29. Counterclaim-Plaintiff Ultrahuman has the right to assert the '523 Patent based on an exclusive license from viO HealthTech Limited.

**Oura's Infringing Activities**

30. Counterclaim-Defendant develops, manufactures, sells, offers to sell, and imports into the United States infringing products and services, including smart ring products Oura Ring 4 and Oura Ring 4 Ceramic, and associated software, including the Oura software application and/or Cycle Insights software, which operates on the smart ring products, user mobile devices, other user devices, and/or Oura Cloud computer servers, and other products and services that have materially similar operability and/or designs (collectively, the "Accused Instrumentalities").

31. By way of example and as demonstrated in further detail below, the Accused Instrumentalities include the Oura Ring 4 and the Oura Ring 4 Ceramic (collectively, the "Oura Rings"), and the associated software operation of Cycle Insights via the Oura mobile application.

32. The Oura Ring 4 is a smart ring device providing information relevant to the health of a user wearing the device:




*See* https://ouraring.com/store/rings.

33. The Oura Ring 4 has the following specifications, which includes monitoring "Digital sensor measures temperature trends":




*See* https://ouraring.com/store/rings.

34. The Oura Ring 4 Ceramic is a smart ring device providing information relevant to the health of a user wearing the ring device. The Oura Ring 4 Ceramic uses the same technology

as the Oura Ring 4 for monitoring using health, including Smart Sensing technology, in a ceramic casing.

35. The Oura Rings operated with the Oura App provide features relating to Women's Health, including Cycle Insights, a prediction of a follicular phase of a female user wearing one of the Oura Rings, and Period Prediction:




*See* https://ouraring.com/store/rings.

36. The Oura Rings provide integrations with partners for fertility assessment based on temperature data measured by the Oura Rings:




*See* https://ouraring.com/store/rings.

37. Oura's employees, including Nina Thigpen, PhD, Shyamel Patel, PhD, and Xi Zhang, PhD, published an article in the Journal of Medical Internet Research on January 31, 2025 titled "Oura Ring as a Tool for Ovulation Detection: Validation Analysis." *See* https://ouraring.com/blog/oura-ovulation-detection-algorithm-validation-study/. In the article, Oura's employees described "Estimating the ovulation date can aid fertility management for conception or nonhormonal contraception and provides insights into follicular and luteal phase lengths." The Oura employees acknowledged that "ovulation tracking can increase the likelihood of conception by approximately 40% for those trying to conceive" and that "[a]pproximately 75% of individuals attempting to conceive use some method to estimate their ovulation date." The Oura employees performed a study to "assess the performance of the physiology method using Oura Ring of ovulation estimation against the traditional calendar method" on a "sample [that] contained 1155 ovulatory menstrual cycles from 964 participants recruited from the Oura Ring commercial

database." From that study, the Oura employees concluded "the results suggest that Oura Ring offers significantly improved accuracy over the traditional calendar method for estimating ovulation date" and that "The physiology method demonstrated superior accuracy over the calendar method, with approximately 3-fold improvement." *See* https://www.jmir.org/2025/1/e60667.

**Ultrahuman's Non-Infringement and the Invalidity of the Oura Patents**

38. Counterclaim-Plaintiffs SVTronics and Ultrahuman assert as follows:

39. On September 3, 2025, Counterclaim-Defendant filed its Complaint against Counterclaim-Plaintiffs alleging infringement of the Patents-in-Suit.

40. In its Complaint, Counterclaim-Defendant alleges that Counterclaim-Plaintiff directly infringes the Patents-in-Suit by making, using, offering for sale, selling, and/or importing accused products, including the Ultrahuman Ring AIR.

41. Counterclaim-Defendant also alleges that Counterclaim-Plaintiff indirectly infringes the Patents-in-Suit by inducing infringement and/or contributing to infringement by others.

42. Counterclaim-Defendant seeks monetary damages and injunctive relief based on its allegations of patent infringement.

43. Counterclaim-Plaintiffs deny that they have infringed or are infringing any valid and enforceable claim of the Patents-in-Suit.

44. A justiciable controversy of sufficient immediacy and reality exists between the parties to warrant the issuance of a declaratory judgment.

**COUNT I - INFRINGEMENT OF U.S. PATENT NO. 8,496,597**

45. Counterclaim-Plaintiff Ultrahuman realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 44.

46. Counterclaim-Plaintiff Ultrahuman hereby asserts a counterclaim against Counterclaim-Defendant for infringement of U.S. Patent No. 8,496,597.

47. The ’597 Patent is directed to methods and devices for “providing information relevant to the fertility of a female mammal.” ’597 Patent at 4:40-4:63. While not limited to any specific embodiment, the ’597 Patent discloses “i) taking multiple temperature readings from the female mammal during an extended period; ii) identifying and disregarding temperature readings having one or more characteristics of faulty or irrelevant data; iii) obtaining one or several representative temperature values for the extended period; iv) repeating steps (i) to (iii) over multiple extended periods and over multiple ovulatory cycles; [and] v) analysing the representative temperature values obtained over multiple extended periods and ovulatory cycles for one or more patterns in the representative temperature values indicative or predictive of ovulation in order to provide information about fertility of the female mammal to a user.” ’597 Patent at 6:7-24. The ’597 Patent also explains the disclosed fertility methods and devices can use “remote computer file server holding information relevant to the fertility of multiple female mammals, . . . said file server being arranged to provide to a user[ ] the information.” *Id.* at 5:41–49.

48. In this District, Counterclaim-Defendant directly, literally and/or under the doctrine of equivalents, infringed and continues to infringe at least one claim of the ’597 Patent by among other things, making, using, selling, offering to sell, and/or importing within this District and elsewhere in the United States, without authority, the Accused Instrumentalities. For example, the Accused Instrumentalities infringe at least claim 21 of the ’597 Patent.

49. The Accused Instrumentalities include a data processing device with a processor. For example, processing occurs in the Oura App, Oura Cloud, the Oura Rings, or a combination thereof. According to Oura, the "Oura Ring connects to the Oura App," and data is transmitted "between the Oura App and the Oura Cloud." *See* https://ouraring.com/blog/health-data-privacy/.

50. The processors of the Accused Instrumentalities are configured to receive multiple measured body temperatures. The body temperatures have one or more characteristics of irrelevant or faulty data and the Accused Instrumentalities either delete said readings or label them to be subsequently disregarded, thereby obtaining a plurality of non-disregarded temperature readings. The Accused Instrumentalities obtain non-disregarded data, for example, "select[ing] values that are most likely to correlate with core body temperature" (see https://ouraring.com/blog/how-oura-measures-temperature/) and/or "filter[ing] out noise" in the temperature readings. *See* https://ouraring.com/blog/oura-ovulation-detection-algorithm-validation-study/). The Oura employees' publication in the Journal of Medical Internet Research also describes that within a dataset of temperature values "outliers were rejected." *See* https://www.jmir.org/2025/1/e60667/PDF.

51. The processors of the Accused Instrumentalities are configured to process the plurality of non-disregarded temperature readings to obtain one or several representative temperature values for each extended period. For example, the Oura Rings track nighttime temperatures each night and uses an algorithm that "selects values that are most likely to correlate with core body temperature and averages across those data points to provide you with a single value that best represents your night." See https://ouraring.com/blog/how-oura-measures-temperature/. "Within the Oura App, body temperature is the measure of changes in [the user's]

average nighttime temperature, as compared to" normal baseline temperature. See https://support.ouraring.com/hc/en-us/articles/360025587493-Body-Temperature.

52. The processors of the Accused Instrumentalities are configured to analyze the representative temperature values obtained over multiple extended overnight periods in order to identify a pattern in the representative temperature values indicative or predictive of ovulation. For example, the Accused Instrumentalities offer Cycle Insights, including analyzing temperature to determine a "Fertile Window." "Fertile Window is intended to help individuals who are trying to conceive by providing visibility into ovulation timing." See https://support.ouraring.com/hc/en-us/articles/4410663885331-Cycle-Insights). Oura advertises "estimating this part of [the user's] cycle is now even easier." See https://ouraring.com/blog/what-is-fertile-window/. The Accused Instrumentalities use overnight temperatures and associated processes and data to determine Fertile Window. *See* https://support.ouraring.com/hc/en-us/articles/360025587493-Body-Temperature ("For members who track their menstrual cycle, average body temperature is an integral part of Oura's Cycle Insights feature"); https://support.ouraring.com/hc/en-us/articles/30561106990227-Fertile-Window-User-Manual ("If temperature patterns change later in your cycle or a historical input is changed (such as editing or deleting a historical period log), your detected ovulation date could change"); https://support.ouraring.com/hc/en-us/articles/4410663885331-Cycle-Insights ("Oura uses your nighttime temperature trends to help determine key events in your cycle . . . . Oura measures your temperature once per minute throughout the night to capture a more complete picture").

53. The processors of the Accused Instrumentalities provide, based on the analysis, an indication related to the fertility of the female human to a computer file server for later retrieval by a user. For example, the data is stored by Oura and retrievable through an application

programming interface (API) by the Oura app or several third-party services. *See* https://support.ouraring.com/hc/en-us/articles/4415266939155-The-Oura-API. As another example, the Accused Instrumentalities produce and store data for a "Predictions Section," which allows users to later retrieve their fertility information using calendars and icons. *See* https://support.ouraring.com/hc/en-us/articles/30561106990227-Fertile-Window-User-Manual#h_01J0V5CWR156B0485JJY9QEYDW. An example of the Fertile Window feature, and explanation from Oura's website, can be viewed below:




*See* https://ouraring.com/blog/what-is-fertile-window/?srsltid=AfmBOoqo4VNnh1v8OqMHNi_0rAal9cik0HY4zObHECeMIbUooBdN_wE3. Moreover, "On days when you're in your

Estimated Fertile Window, your 'Chance of conception' will be marked as 'High,' accompanied by an icon of a meter with a high reading." *Id.* And "Once ovulation has been detected, your confirmed ovulation day will be marked on the bottom of your temperature graph with a solid white icon of an egg." *Id.* Examples of such Fertile Window displays can be viewed below:







54. The representative temperature values of the Accused Instrumentalities are not the maximum or minimum measured temperature readings obtained for the extended period. For example, Oura uses the "average body temperature from the skin." See

https://support.ouraring.com/hc/en-us/articles/360025587493-Body-Temperature#:~:text=In%20a%20study%20conducted%20by,taken%20throughout%20the%20previous%20night. Additionally or alternatively, the algorithm used in Oura Rings removes outliers and/or applies a bandpass filter to filter out temperature data above and below certain thresholds. Oura employees describe processing Oura Ring temperature data using an algorithm "that uses signal processing techniques to analyze continuously recorded finger temperature from Oura Ring to estimate the date of the most recent ovulation event." See https://pmc.ncbi.nlm.nih.gov/articles/PMC11829181/; https://www.jmir.org/2025/1/e60667/PDF. The algorithm was "optimize[d] for detecting the rise in temperature following ovulation," and includes rejecting "outliers" and applying a "bandpass filter" to remove data. See id.

55. The overnight period of the Accused Instrumentalities is one hour or longer. The Accused Instrumentalities measure overnight temperatures for multiple days and during a user's sleep "throughout the previous night." See https://support.ouraring.com/hc/en-us/articles/360025587493-Body-Temperature; https://support.ouraring.com/hc/lv/articles/360055983614-Using-Trends.

56. Oura has provided and continues to provide some or all of the Accused Instrumentalities to third-parties in order to offer fertility services. These parties include at least Progyny, Inc. (https://www.femtechworld.co.uk/news/fertility-news/progyny-and-oura-link-up-on-womens-health-tracking/#:~:text=The%20integration%20will%20allow%20for,deliver%20individualised%20insights%20to%20users.)) , NaturalCycles Nordic AB (https://www.naturalcycles.com/oura), BioWink GmbH (d/b/a Clue) (https://helloclue.com/articles/about-clue/clue-and-ura-announce-

partnership), and Flo Health UK Limited (https://support.ouraring.com/hc/en-us/articles/10705471244947-Partner-Integrations) (collectively, "Oura Fertility Partners").

57. In this District and elsewhere in the United States, Counterclaim-Defendant has indirectly infringed at least claim 21 of the '597 Patent by inducing users to infringe—such users, include but are not limited to, the Oura Fertility Partners. Counterclaim Defendants instruct its users through its website, user guides, blog posts, and other information, to operate the Accused Instrumentalities in a manner that directly infringes claim 21 of the '597 Patent, as identified above. *See* https://support.ouraring.com/hc/en-us/articles/30561106990227-Fertile-Window-User-Manual#h_01J0V5CWR156B0485JJY9QEYDW; https://support.ouraring.com/hc/en-us/articles/360025587493-Body-Temperature; https://ouraring.com/blog/what-is-fertile-window/?srsltid=AfmBOoqo4VNnh1v8OqMHNi_0rAal9cik0HY4zObHECeMIbUooBdN_wE3.

58. In this District and elsewhere in the United States, Counterclaim-Defendant is liable for contributory infringement of claim 21 of the '597 Patent by selling components of the Accused Instrumentalities, which are combined or used by others—including, but not limited to the Oura Fertility Partners—to infringe the patented device and constitute a material part of the invention. For example, the Accused Instrumentalities include the Fertility Window software, the Oura Ring smart ring, and processors, which are components of an apparatus for use in practicing a patented process and, upon information and belief, are not a staple article or commodity of commerce suitable for substantial non-infringing use. Such infringement occurs literally and/or under the doctrine of equivalents.

59. On information and belief, Counterclaim-Defendant knows such acts are especially made or adapted for infringement.

60. Counterclaim-Defendant has knowledge of its infringement of one or more claims of the ’597 Patent at least since the filing of this Answer. At least since the filing of this Answer, Counterclaim-Defendant’s infringement of the ’597 Patent is willful as Counterclaim-Defendant could not and does not reasonably, subjectively believe the ’597 Patent is invalid or not infringed. Counterclaim-Defendant continues to commit acts of infringement despite a high likelihood that its actions constitute infringement, and Counterclaim-Defendant knew or should have known that its actions constituted an unjustifiably high risk of infringement.

**COUNT II - INFRINGEMENT OF U.S. PATENT NO. 9,155,522**

61. Counterclaim-Plaintiff Ultrahuman realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 60.

62. Counterclaim-Plaintiff Ultrahuman hereby asserts a counterclaim against Counterclaim-Defendant for infringement of U.S. Patent No. 9,155,522.

63. The ’522 Patent is directed to “providing information relevant to the fertility of a female mammal.” ’522 Patent at 4:51-52. While not limited to any specific embodiment, the ’522 Patent discloses methods of “detecting and predicting ovulation and a period of fertility includ[ing] determining a series of measures indicative of the basal body temperature of a female human user to identify a temperature change event,” “obtaining, within a first 24 hour period, a plurality of first readings of the temperature of the female human user at intervals over a first extended period of at least an hour,” where the “plurality of first readings are then processed to determine at least one first representative temperature reading representative of the basal body temperature of the user for the first extended period and the at least one first representative temperature reading is stored,” repeating “for at least second and third 24 hour periods and the representative temperature

readings are provided for analysis to identify a temperature change event for the female human user." *Id.*, Abstract.

64. In this District, Counterclaim-Defendant directly, literally and/or under the doctrine of equivalents, infringed and continues to infringe at least one claim of the '522 Patent by, among other things, making, using, selling, offering to sell, and/or importing within this District and elsewhere in the United States, without authority, the Accused Instrumentalities. For example, the Accused Instrumentalities infringe at least claim 1 of the '522 Patent.

65. The Accused Instrumentalities determine a series of measures indicative of the basal body temperature of a female human user to identify a temperature change event for the female human user. For example, the Oura Rings includes Cycle Insights and Fertility Window features which measure temperatures indicative of the basal body temperature of female users at night. Moreover, Oura uses its user's "nighttime temperature trends to help determine key events in [their] cycle." *See*https://support.ouraring.com/hc/en-us/articles/4410663885331-Cycle-Insights). Oura explains to its users that "[u]sing biomarkers like body temperature trends, Cycle Insights will show you which phase of the menstrual cycle you're in." *See*https://ouraring.com/blog/oura-cycle-insights/?srsltid=AfmBOoqi_-ird2d00FckyjX8-He4CnxoU5UamYb0QPMLQDiu4G7Iw-m-. Oura notes that "the most important biosignal for menstrual cycle tracking is [ ] body temperature," and that once ovulation occurs "body temperature sharply increases, and continues to rise up until your period starts." *Id.*

66. The Accused Instrumentalities obtain within a first 24-hour period, a plurality of first readings of the temperature of the female human user at intervals over a first extended period of at least an hour using a temperature sensor that is retained in contact with the female human user throughout the extended period. For example, "[e]very minute, Oura's temperature sensor

measures your temperature" and averages "data points to provide you with a single value that best represents your night." (https://ouraring.com/blog/how-oura-measures-temperature/). Below, Oura's website shows its Oura Ring includes a temperature sensor:




*See* https://ouraring.com/blog/technology-in-oura-ring-4/?srsltid=AfmBOorsXK3WZVtg4k2BlDuZAqEiUFb9iLyF6iVyIq8MH5hMDaR6nWmd.

67. The Accused Instrumentalities process the plurality of first readings to determine at least one first representative temperature reading representative of the basal body temperature of the user based on at least two readings of the plurality of first readings for the first extended period. For example, the Oura Ring takes temperature every minute and the Accused Instrumentalities "select[ ] values that are most likely to correlate with core body temperature and averages across those data points to provide you with a single value that best represents your night." *See* https://ouraring.com/blog/how-oura-measures-temperature/.

68. The Accused Instrumentalities store the at least one first representative temperature reading. For example, the Accused Instrumentalities repeat the process nightly and store data for several nights that is subsequently viewable in the Oura App, as pictured below.




*See* https://support.ouraring.com/hc/en-us/articles/4410663885331-Cycle-Insights.

69. At least because the above process is repeated each night, the Accused Instrumentalities also:

> obtain, within a second 24 hour period, a plurality of second readings of the temperature of the female human user at intervals over a second extended period of at least an hour using a temperature sensor that is retained in contact with the female human user throughout the extended period;

process the plurality of second readings to determine at least one second representative temperature reading representative of the basal body temperature of the user based on at least two readings of the plurality of second readings for the second extended period;

store the at least one second representative temperature reading;

obtain within a third 24 hour period, a plurality of third readings of the temperature of the female human user at intervals over a third extended period of at least an hour using a temperature sensor that is retained in contact with the female human user throughout the extended period;

processing the plurality of third readings to determine at least one third representative temperature reading representative of the basal body temperature of the user based on at least two readings of the plurality of third readings for the third extended period; and

store the at least one third representative temperature reading.

70. The Accused Instrumentalities provide the at least one first, at least one second and at least one third representative temperature reading for analysis to identify a temperature change event for the female human user. For example, the Accused Instrumentalities use "your nighttime temperature trends to help determine key events in your cycle." *See* https://support.ouraring.com/hc/pl/articles/4410663885331-Cycle-Insights. Moreover, the temperature trends use "a weighted average of how your body temperature varies from your baseline based on a three-day window." *See* https://support.ouraring.com/hc/lv/articles/360055983614-Using-Trends. "Oura measures your nighttime body temperature relative to your personalized baseline, so you can easily see when your temperature starts to drop near menstruation or changes for each cycle phase." *See* https://ouraring.com/blog/menstrual-cycle-variation/?srsltid=AfmBOooLeDPVI4imTfW_WNUTR9RKJiCPG_mdS7PmdW6kJJ0KwFFf4ivU.

71. The Accused Instrumentalities provide an indication to the female human user of an identified temperature change event. For example, the Fertile window shows "you how your

temperature rises and falls each day compared to your baseline throughout your cycle." *See* https://support.ouraring.com/hc/en-us/article_attachments/40332888363283. For example, the Accused Instrumentalities produce and store data for a "Predictions Section," which allows users to later retrieve their fertility information using calendars and icons. *See* https://support.ouraring.com/hc/en-us/articles/30561106990227-Fertile-Window-User-Manual #h_01J0V5CWR156B0485JJY9QEYDW. An example of the Fertile Window feature, and explanation from Oura's website, can be viewed below:




*See* https://ouraring.com/blog/what-is-fertile-window/?srsltid=AfmBOoqo4VNnh1v8OqMHNi_0rAal9cik0HY4zObHECeMIbUooBdN_wE3. Moreover, "On days when you're in your Estimated

Fertile Window, your 'Chance of conception' will be marked as 'High,' accompanied by an icon of a meter with a high reading." *Id.* And "Once ovulation has been detected, your confirmed ovulation day will be marked on the bottom of your temperature graph with a solid white icon of an egg." *Id.* Examples of such Fertile Window displays can be viewed below.







72. Oura has provided and continues to provide some or all of the Accused Instrumentalities to third-parties in order to offer fertility services. These parties include at least the Oura Fertility Partners.

73. In this District and elsewhere in the United States, Counterclaim-Defendant has indirectly infringed at least claim 1 of the '522 Patent by inducing users to infringe—such users include but are not limited to the Oura Fertility Partners. Counterclaim-Defendant instructs its users through its website, user guides, blog posts, and other information, to operate the Accused Instrumentalities in a manner that directly infringes claim 1 of the '522 Patent, as identified above. *See* https://support.ouraring.com/hc/en-us/articles/30561106990227-Fertile-Window-User-Manual#h_01J0V5CWR156B0485JJY9QEYDW, https://support.ouraring.com/hc/en-us/articles/360025587493-Body-Temperature, https://ouraring.com/blog/what-is-fertile-window/?srsltid=AfmBOoqo4VNnh1v8OqMHNi_0rAal9cik0HY4zObHECeMIbUooBdN_wE3. Such infringement occurs literally and/or under the doctrine of equivalents.

74. In this District and elsewhere in the United States, Counterclaim-Defendant is liable for contributory infringement of claim 1 of the '522 Patent by selling components of the Accused Instrumentalities, which are combined or used by others—including, but not limited to the Oura Fertility Partners—to infringe the patented device and constitute a material part of the invention. For example, the Accused Instrumentalities include the Fertility Window software, the Oura Ring smart ring, and processors, which are components of an apparatus for use in practicing a patented process and, upon information and belief, are not a staple article or commodity of commerce suitable for substantial non-infringing use. Such infringement occurs literally and/or under the doctrine of equivalents.

75. On information and belief, Counterclaim-Defendant knows such acts are especially made or adapted for infringement.

76. Counterclaim-Defendant has knowledge of its infringement of one or more claims of the '522 Patent at least since the filing of these Counterclaims. At least since the filing of these

Counterclaims, Counterclaim-Defendant's infringement of the '522 Patent is willful as Counterclaim-Defendant could not and does not reasonably, subjectively believe the '522 Patent is invalid or not infringed. Counterclaim-Defendant continues to commit acts of infringement despite a high likelihood that its actions constitute infringement, and Counterclaim-Defendant knew or should have known that its actions constituted an unjustifiably high risk of infringement.

**COUNT III - INFRINGEMENT OF U.S. PATENT NO. 9,155,523**

77. Counterclaim-Plaintiff Ultrahuman realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 76.

78. Counterclaim-Plaintiff Ultrahuman hereby asserts a counterclaim against Counterclaim-Defendant for infringement of U.S. Patent No. 9,155,523.

79. The '523 Patent is directed to "providing information relevant to the fertility of a female mammal." '523 Patent at 4:53-54. While not limited to any specific embodiment, the '523 Patent discloses methods of "remote computer file server holding information about fertility of multiple female mammals, the information relating to each female mammal being labelled with a unique identifier code corresponding to an individual female mammal, said file server being arranged to provide to a user, the information labelled with a particular unique identifier code in response to the provision of that code to the remote computer file server." *Id.* at 21:40-47. Moreover, the '523 Patent discloses devices and methods where "[a]nalysis of the representative temperature values obtained from a single female mammal may be analysed by comparing them with the values obtained from other female mammals or by comparing them with derivative data (for example, average data) obtained from other female mammals. *Id.* at 19:62-20:3.

80. In this District, Counterclaim-Defendant directly, literally and/or under the doctrine of equivalents, infringed and continues to infringe at least one claim of the '523 Patent by, among

other things, making, using, selling, offering to sell, and/or importing within this District and elsewhere in the United States, without authority, the Accused Instrumentalities. For example, the Accused Instrumentalities infringe at least claim 18 of the '523 Patent.

81. The Accused Instrumentalities perform a method for processing data indicative of a basal body temperature of a female human user to identify a temperature change event for the female human user. For example, the Oura Ring includes Cycle Insights and Fertility Window features which measure temperatures indicative of the basal body temperature of female users at night. Moreover, Oura uses its user's "nighttime temperature trends to help determine key events in [their] cycle." *See*https://support.ouraring.com/hc/en-us/articles/4410663885331-Cycle-Insights). Oura explains to its users that "[u]sing biomarkers like body temperature trends, Cycle Insights will show you which phase of the menstrual cycle you're in." *See*https://ouraring.com/blog/oura-cycle-insights/?srsltid=AfmBOoqi_-ird2d00FckyjX8-He4CnxoU5UamYb0QPMLQDiu4G7Iw-m-. Oura notes that "the most important biosignal for menstrual cycle tracking is [ ] body temperature," and that once ovulation occurs "body temperature sharply increases, and continues to rise up until your period starts." *Id.*

82. On information and belief, the Accused Instrumentalities receive multiple body temperature readings or information derived therefrom from multiple female human users, wherein the readings for each user are uniquely identified. For example, "[e]very minute, Oura's temperature sensor measures your temperature" and averages "data points to provide you with a single value that best represents your night." *See* https://ouraring.com/blog/how-oura-measures-temperature/. On information and belief, the temperature readings for each user are stored in a database with unique identifiers. On information and belief, Oura's algorithm for producing Cycle Insights and Prediction is trained and tuned on multiple female users. Oura developed an algorithm

"by assessing a separate training dataset of 30,000 menstrual cycles," where "[t]he study sample consisted of 964 female participants." *See* https://pmc.ncbi.nlm.nih.gov/articles/PMC11829181/. Oura noted its data was "deidentified and anonymous," indicating that a user's personal information was removed and a unique identifier was used instead. *Id.*

83. The Accused Instrumentalities identify temperature readings having one or more characteristics of irrelevant or faulty data and either deleting said readings or labelling them as to be disregarded. The Accused Instrumentalities, for example, "select[] values that are most likely to correlate with core body temperature" (*see* https://ouraring.com/blog/how-oura-measures-temperature/) and/or "filter[ing] out noise" in the temperature readings. *See* https://ouraring.com/blog/oura-ovulation-detection-algorithm-validation-study/?srsltid=AfmBOoqKQDFFeMd1--uZ2jdmCMjPkyupu-5lNdpx-S4QfzJOgnPJcAZh.

84. The Accused Instrumentalities obtain one or several representative temperature values for each of multiple extended periods. For example, during each night, "[e]very minute, Oura's temperature sensor measures your temperature" and averages "data points to provide you with a single value that best represents your night." *See* https://ouraring.com/blog/how-oura-measures-temperature/. For example, the Accused Instrumentalities repeat the process nightly and store data for several nights that is subsequently viewable in the Oura App, as pictured below.




*See* https://support.ouraring.com/hc/en-us/articles/4410663885331-Cycle-Insights.

85. On information and belief, the Accused Instrumentalities analyze the representative temperature values over multiple extended periods and information from values obtained for other female human users to identify a pattern indicative or predictive of ovulation. For example, the Accused Instrumentalities offer Cycle Insights, including analyzing temperature to determine a "Fertile Window." "Fertile Window is intended to help individuals who are trying to conceive by

providing visibility into ovulation timing." *See* https://support.ouraring.com/hc/en-us/articles/4410663885331-Cycle-Insights. Oura advertises "estimating this part of [the user's] cycle is now even easier." *See* https://ouraring.com/blog/what-is-fertile-window/. The Accused Instrumentalities use overnight temperatures and associated processes and data to determine Fertile Window. *See* https://support.ouraring.com/hc/en-us/articles/360025587493-Body-Temperature ("For members who track their menstrual cycle, average body temperature is an integral part of Oura's Cycle Insights feature"); https://support.ouraring.com/hc/en-us/articles/30561106990227-Fertile-Window-User-Manual ("If temperature patterns change later in your cycle or a historical input is changed (such as editing or deleting a historical period log), your detected ovulation date could change"); https://support.ouraring.com/hc/en-us/articles/4410663885331-Cycle-Insights ("Oura uses your nighttime temperature trends to help determine key events in your cycle . . . . Oura measures your temperature once per minute throughout the night to capture a more complete picture"). On information and belief, Oura's algorithm used to generate Cycle Insights is trained and tuned on multiple female users. Oura developed an algorithm "by assessing a separate training dataset of 30,000 menstrual cycles," where "[t]he study sample consisted of 964 female participants." https://pmc.ncbi.nlm.nih.gov/articles/PMC11829181/.

86. On information and belief, the Accused Instrumentalities: (1) store information relevant to fertility or the timing of ovulation for each user associated with a unique identifier securely on a computer file server for secure retrieval by the user associated with the unique identifier ("all of your Oura data and account information will remain securely saved under our privacy policy"; https://support.ouraring.com/hc/en-us/articles/4409086524819-Oura-Membership#01GSDVPV8GJTDWKTB5FC5B3XS5; and (2) receive from the user a request for the information, wherein the request comprises the unique identifier associated with the user, and

generate and transmit a signal to cause an interface to provide a visible indication of the information for display to the user ("Once you re-enroll in Oura Membership, your data and account information will immediately be accessible again"; https://support.ouraring.com/hc/en-us/articles/4409086524819-Oura-Membership#01GSDVPV8GJTDWKTB5FC5B3XS5). For example, the Accused Instrumentalities produce and store data for a "Predictions Section," which allows users to later retrieve their fertility information using calendars and icons. *See* https://support.ouraring.com/hc/en-us/articles/30561106990227-Fertile-Window-User-Manual #h_01J0V5CWR156B0485JJY9QEYDW. An example of the Fertile Window feature, and explanation from Oura's website, can be viewed below:



*See* https://ouraring.com/blog/what-is-fertile-window/?srsltid=AfmBOoqo4VNnh1v8OqMHNi_0rAal9cik0HY4zObHECeMIbUooBdN_wE3. On information and belief, Oura stores user data including ovulation and fertility data on the Oura Cloud using a unique identifier corresponding to the user. For example, the data is subsequently displayed to the user on their Oura App, as discussed above, in response to a user request and corresponding signal for Cycle Insights.

87. On information and belief, the Accused Instrumentalities store data for multiple cycles and for multiple users and perform said analyzing based on the multiple cycles and multiple users. As discussed above, Oura's algorithms are trained on multiple cycles and multiple users.

88. Oura has provided and continues to provide some or all of the Accused Instrumentalities to third-parties in order to offer fertility services. These parties include at least the Oura Fertility Partners.

89. In this District and elsewhere in the United States, Counterclaim-Defendant has indirectly infringed at least claim 18 of the '523 Patent by inducing users to infringe—such users include but are not limited to the Oura Fertility Partners. Counterclaim Defendant instructs its users through its website, user guides, blog posts, and other information, to operate the Accused Instrumentalities in a manner that directly infringes claim 18 of the '523 Patent, as identified above. *See* https://support.ouraring.com/hc/en-us/articles/30561106990227-Fertile-Window-User-Manual#h_01J0V5CWR156B0485JJY9QEYDW, https://support.ouraring.com/hc/en-us/articles/360025587493-Body-Temperature, https://ouraring.com/blog/what-is-fertile-window/?srsltid=AfmBOoqo4VNnh1v8OqMHNi_0rAal9cik0HY4zObHECeMIbUooBdN_wE3. Such infringement occurs literally and/or under the doctrine of equivalents.

90. In this District and elsewhere in the United States, Counterclaim-Defendant is liable for contributory infringement of claim 18 of the '523 Patent by selling components of the Accused

Instrumentalities, which are combined or used by others—including, but not limited to the Oura Fertility Partners—to infringe the patented device and constitute a material part of the invention. For example, the Accused Instrumentalities include the Fertility Window software, the Oura Ring smart ring, and processors, which are components of an apparatus for use in practicing a patented process and, upon information and belief, are not a staple article or commodity of commerce suitable for substantial non-infringing use. Such infringement occurs literally and/or under the doctrine of equivalents.

91. On information and belief, Counterclaim-Defendant knows such acts are especially made or adapted for infringement.

92. Counterclaim-Defendant has knowledge of its infringement of one or more claims of the ’523 Patent at least since the filing of these Counterclaims. At least since the filing of these Counterclaims, Counterclaim-Defendant’s infringement of the ’523 Patent is willful as Counterclaim-Defendant could not and does not reasonably, subjectively believe the ’523 Patent is invalid or not infringed. Counterclaim-Defendant continues to commit acts of infringement despite a high likelihood that its actions constitute infringement, and Counterclaim-Defendant knew or should have known that its actions constituted an unjustifiably high risk of infringement.

## COUNT IV - DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 12,393,228

93. Counterclaim-Plaintiff Ultrahuman realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 92 above. Counterclaim-Plaintiff SVTronics realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 44 above.

94. Counterclaim-Defendant has asserted in its Complaint that Counterclaim-Plaintiffs infringe one or more claims of U.S. Patent No. 12,393,228.

95. Counterclaim-Plaintiffs have not infringed and are not infringing, either literally or under the doctrine of equivalents, any valid and enforceable claim of U.S. Patent No. 12,393,228, either directly, contributorily, or by inducement.

96. An actual and justiciable controversy exists between the parties regarding non-infringement of U.S. Patent No. 12,393,228.

97. A judicial declaration of non-infringement is necessary and appropriate so that Counterclaim-Plaintiffs may ascertain their rights regarding U.S. Patent No. 12,393,228.

**COUNT V - DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 12,393,228**

98. Counterclaim-Plaintiff Ultrahuman realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 97 above. Counterclaim-Plaintiff SVTronics realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 44 and 93 through 97 above.

99. One or more claims of U.S. Patent No. 12,393,228 are invalid for failure to meet one or more of the conditions of patentability set forth in Title 35 of the United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, and/or 112.

100. An actual and justiciable controversy exists between the parties regarding the validity of U.S. Patent No. 12,393,228.

101. A judicial declaration of invalidity is necessary and appropriate so that Counterclaim-Plaintiffs may ascertain their rights regarding U.S. Patent No. 12,393,228.

**COUNT VI - DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 12,393,229**

102. Counterclaim-Plaintiff Ultrahuman realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 101 above. Counterclaim-Plaintiff SVTronics

realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 44 and 93 through 101 above.

103. Counterclaim-Defendant has asserted in its Complaint that Counterclaim-Plaintiffs infringe one or more claims of U.S. Patent No. 12,393,229.

104. Counterclaim-Plaintiffs have not infringed and are not infringing, either literally or under the doctrine of equivalents, any valid and enforceable claim of U.S. Patent No. 12,393,229, either directly, contributorily, or by inducement.

105. An actual and justiciable controversy exists between the parties regarding non-infringement of U.S. Patent No. 12,393,229.

106. A judicial declaration of non-infringement is necessary and appropriate so that Counterclaim-Plaintiffs may ascertain their rights regarding U.S. Patent No. 12,393,229.

**COUNT VII - DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 12,393,229**

107. Counterclaim-Plaintiff Ultrahuman realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 106 above. Counterclaim-Plaintiff SVTronics realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 44 and 93 through 106 above.

108. One or more claims of U.S. Patent No. 12,393,229 are invalid for failure to meet one or more of the conditions of patentability set forth in Title 35 of the United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, and/or 112.

109. An actual and justiciable controversy exists between the parties regarding the validity of U.S. Patent No. 12,393,229.

110. A judicial declaration of invalidity is necessary and appropriate so that Counterclaim-Plaintiffs may ascertain their rights regarding U.S. Patent No. 12,393,229.

**COUNT VIII - DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 12,399,530**

111. Counterclaim-Plaintiff Ultrahuman realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 110 above. Counterclaim-Plaintiff SVTronics realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 44 and 93 through 110 above.

112. Counterclaim-Defendant has asserted in its Complaint that Counterclaim-Plaintiffs infringe one or more claims of U.S. Patent No. 12,399,530.

113. Counterclaim-Plaintiffs have not infringed and are not infringing, either literally or under the doctrine of equivalents, any valid and enforceable claim of U.S. Patent No. 12,399,530, either directly, contributorily, or by inducement.

114. An actual and justiciable controversy exists between the parties regarding non-infringement of U.S. Patent No. 12,399,530.

115. A judicial declaration of non-infringement is necessary and appropriate so that Counterclaim-Plaintiffs may ascertain their rights regarding U.S. Patent No. 12,399,530.

**COUNT IX - DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 12,399,530**

116. Counterclaim-Plaintiff Ultrahuman realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 115 above. Counterclaim-Plaintiff SVTronics realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 44 and 93 through 115 above.

117. One or more claims of U.S. Patent No. 12,399,530 are invalid for failure to meet one or more of the conditions of patentability set forth in Title 35 of the United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, and/or 112.

118. An actual and justiciable controversy exists between the parties regarding the validity of U.S. Patent No. 12,399,530.

119. A judicial declaration of invalidity is necessary and appropriate so that Counterclaim-Plaintiffs may ascertain their rights regarding U.S. Patent No. 12,399,530.

**COUNT X - DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 12,399,531**

120. Counterclaim-Plaintiff Ultrahuman realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 119 above. Counterclaim-Plaintiff SVTronics realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 44 and 93 through 119 above.

121. Counterclaim-Defendant has asserted in its Complaint that Counterclaim-Plaintiffs infringe one or more claims of U.S. Patent No. 12,399,531.

122. Counterclaim-Plaintiffs have not infringed and are not infringing, either literally or under the doctrine of equivalents, any valid and enforceable claim of U.S. Patent No. 12,399,531, either directly, contributorily, or by inducement.

123. An actual and justiciable controversy exists between the parties regarding non-infringement of U.S. Patent No. 12,399,531.

124. A judicial declaration of non-infringement is necessary and appropriate so that Counterclaim-Plaintiffs may ascertain their rights regarding U.S. Patent No. 12,399,531.

**COUNT XI - DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 12,399,531**

125. Counterclaim-Plaintiff Ultrahuman realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 124 above. Counterclaim-Plaintiff SVTronics

realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 44 and 93 through 124 above.

126. One or more claims of U.S. Patent No. 12,399,531 are invalid for failure to meet one or more of the conditions of patentability set forth in Title 35 of the United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, and/or 112.

127. An actual and justiciable controversy exists between the parties regarding the validity of U.S. Patent No. 12,399,531.

128. A judicial declaration of invalidity is necessary and appropriate so that Counterclaim-Plaintiffs may ascertain their rights regarding U.S. Patent No. 12,399,531.

## COUNT XII - DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 12,222,759

129. Counterclaim-Plaintiff Ultrahuman realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 128 above. Counterclaim-Plaintiff SVTronics realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 44 and 93 through 128 above.

130. Counterclaim-Defendant has asserted in its Complaint that Counterclaim-Plaintiffs infringe one or more claims of U.S. Patent No. 12,222,759.

131. Counterclaim-Plaintiffs have not infringed and are not infringing, either literally or under the doctrine of equivalents, any valid and enforceable claim of U.S. Patent No. 12,222,759, either directly, contributorily, or by inducement.

132. An actual and justiciable controversy exists between the parties regarding non-infringement of U.S. Patent No. 12,222,759.

133. A judicial declaration of non-infringement is necessary and appropriate so that Counterclaim-Plaintiffs may ascertain their rights regarding U.S. Patent No. 12,222,759.

**COUNT XIII - DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 12,222,759**

134. Counterclaim-Plaintiff Ultrahuman realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 133 above. Counterclaim-Plaintiff SVTronics realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 44 and 93 through 133 above.

135. One or more claims of U.S. Patent No. 12,222,759 are invalid for failure to meet one or more of the conditions of patentability set forth in Title 35 of the United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, and/or 112.

136. An actual and justiciable controversy exists between the parties regarding the validity of U.S. Patent No. 12,222,759.

137. A judicial declaration of invalidity is necessary and appropriate so that Counterclaim-Plaintiffs may ascertain their rights regarding U.S. Patent No. 12,222,759.

**PRAYER FOR RELIEF ON COUNTERCLAIMS**

WHEREFORE, Counterclaim-Plaintiffs respectfully request that this Court enter judgment in their favor and against Counterclaim-Defendant as follows:

**I. On Counterclaim-Plaintiff Ultrahuman's Counterclaims for Patent Infringement:**

A. A judgment that Counterclaim-Defendant has infringed and continues to infringe, directly or indirectly, each of the Asserted Patents;

B. Compensatory damages in an amount commensurate with Counterclaim-Defendant's infringement of the Ultrahuman Patents, including without limitation lost profits and no less than a reasonable royalty;

C. Entry of a permanent injunction enjoining Counterclaim-Defendant from making, using, selling (including for importation), offering to sell (including for importation),

and/or importing the Accused Instrumentalities including the Oura Rings, and/or otherwise infringing, or inducing or contributing to the infringement of, any of the Ultrahuman Patents, and/or a judgment that awards Counterclaim-Plaintiff all appropriate damages under 35 U.S.C. § 284 for Counterclaim-Defendant's future infringement including ongoing royalties as justified under 35 U.S.C. § 284;

D. Pre-judgment interest on all damages awarded to Counterclaim-Plaintiff;

E. Post-judgment interest on all sums awarded to Counterclaim-Plaintiff from the date of the judgment;

F. That Counterclaim-Defendant's infringement is willful and that the damages awarded to Counterclaim-Plaintiff include treble damages pursuant to 35 U.S.C. § 284;

**II. On Counterclaim-Plaintiffs' Counterclaims for Declaratory Judgement:**

G. A declaration that Counterclaim-Plaintiffs have not infringed and are not infringing, either literally or under the doctrine of equivalents, any valid and enforceable claim of U.S. Patent Nos. 12,393,228, 12,393,229, 12,399,530, 12,399,531, and 12,222,759, either directly, contributorily, or by inducement;

H. A declaration that the asserted claims of U.S. Patent Nos. 12,393,228, 12,393,229, 12,399,530, 12,399,531, and 12,222,759 are invalid;

I. A finding that this is an exceptional case under 35 U.S.C. § 285 and an award to Counterclaim-Plaintiffs of their costs and reasonable attorneys' fees incurred in this action;

J. An award of such other and further relief as this Court deems just and proper.

## JURY DEMAND ON COUNTERCLAIMS

Counterclaim-Plaintiffs demand a trial by jury on all issues so triable with respect to their Counterclaims.

Dated: November 10, 2025

Respectfully submitted,

**NORTON ROSE FULBRIGHT US LLP**

By: /s/ Robert Greeson

Robert Greeson (Texas Bar No. 24045979)
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201-7932
Telephone: (214) 855-7430
Facsimile: (214) 855-8200
Email: robert.greeson@nortonrosefulbright.com

Darren Smith (Texas Bar No. 24088433)
Thayer Walmsley (Texas Bar No. 24143501)
1550 Lamar Street, Suite 2000
Houston, Texas 77010-4106
Telephone: (713) 651-8361
Facsimile: (713) 651-5246
Email: darren.smith@nortonrosefulbright.com
Email: thayer.walmsley@nortonrosefulbright.com

***Attorneys for Defendants, Ultrahuman Healthcare LLC and SVTronics, Inc.***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 10, 2025, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the

Court's CM/ECF system. Any other counsel of record will be served in accordance with the Federal Rules of Civil Procedure.

By: /s/ Robert Greeson
Robert Greeson